1
2
3
4
5
6
7
8

**IN THE UNITED STATES DISTRICT COURT**

9

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

| | | |
|---|---|---|
| 11 | J & J SPORTS PRODUCTIONS, INC., | ) Case No.: 1:10-cv-02085 OWW JLT |
| 12 | Plaintiff, | ) |
| 13 | v. | ) FINDINGS AND RECOMMENDATIONS<br>) GRANTING IN PART AND DENYING IN<br>) PART PLAINTIFF'S APPLICATION FOR |
| 14 | | ) ENTRY OF DEFAULT JUDGMENT |
| 15 | BENJAMIN ARRIAGA LEMUS, et al., | ) (Doc. 10) |
| 16 | Defendants. | ) |
| 17 | | ) |

18    J & J Sports Productions, Inc. ("Plaintiff") seeks the entry of default judgment against

19  defendants Benjamin Arriaga Lemus and Maria Guadalupe Leonde Arriaga, individually and doing

20  business as Arriagas Mexican Restaurant & Cantina (collectively, "Defendants").  (Doc. 10).

21  Defendants have not opposed Plaintiff's application.  The Court reviewed Plaintiff's motion and

22  supporting documents and determined that this matter is suitable for decision without oral argument

23  pursuant to Local Rule 230(g).  For the following reasons, the Court recommends that Plaintiff's

24  application for default judgment be **GRANTED IN PART AND DENIED IN PART**.

25  **I.  Procedural History**

26    On November 9, 2010, Plaintiff filed its Complaint against Defendants, alleging violations of

27  47 U.S.C. § 605, *et seq.*; 47 U.S.C. § 533, *et seq.*; and the California Business and Professions Code

28  § 17200, *et seq*.  In addition, Plaintiff alleges Defendants are liable for wrongful conversion of

property, arising under California State law.  (Doc. 1 at 3-7).  Plaintiff claims to have possessed the exclusive rights to the nationwide commercial distribution of "Firepower: Manny Pacquiao v. Miguel Cotto, WBO Welterweight Championship Fight Program" ("the Program"), televised on November 14, 2009.  *Id.* at 3.  All claims are based upon Defendants' alleged signal piracy though unlawful interception and broadcast of the Program.

Defendants were properly served with the Complaint on November 30, 2010, and failed to respond within the time prescribed by the Federal Rules of Civil Procedure.  Upon application of Plaintiff, and pursuant to Fed.R.Civ.P. 55(a), default was entered against Defendants on December 22, 2010.  (Doc. 9).  Plaintiff filed the application for default judgment now before the Court on December 29, 2010.  (Doc. 10).  Despite being properly served, Defendants failed to participate in this action.

## II.  Legal Standards for Default Judgment

The Federal Rules of Civil Procedure govern applications to the Court for issuance of default judgment.  Where a default has been entered because "a party against whom a judgment for relief is sought has failed to plead or otherwise defend," the party seeking relief may apply to the court for a default judgment.  Fed.R.Civ.P. 55(a)-(b).  After the entry of default, well-pleaded factual allegations regarding liability are taken as true, but allegations regarding the amount of damages must be proven.  *Pope v. United States*, 323 U.S. 1, 22 (1944); *see also Geddes v. United Financial Group*, 559 F.2d 557, 560 (9th Cir. 1977).

The entry of default "does not automatically entitle the plaintiff to a court-ordered judgment.  *Pepsico, Inc. v. Cal. Sec. Cans*, 238 F.Supp.2d 1172, 1174 (C.D. Cal 2002), *accord Draper v. Coombs*, 792 F.2d 915, 924-25 (9th Cir. 1986).  In addition, granting or denying a motion for default judgment is within the discretion of the Court.  *Aldabe v. Aldabe*, 616 F.2d 1089, 1980 (9th Cir. 1980).  The Ninth Circuit opined,

> Factors which may be considered by courts in exercising discretion as to the entry of a default judgment include: (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

1  *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).  As a general rule, the issuance of default

2  judgment is disfavored.  *Id.* at 1472.

3  **III.   Plaintiff's Factual Allegations**

4           According to Plaintiff, the Program consisted not only of the main fight between Manny

5  Pacquiao and Miguel Cotto, but also "several televised under-card bouts," including a fight between

6  Yuri Foreman and Daniel Santos.  (Doc. 11 at 2).  Plaintiff states that by contract, it possessed

7  exclusive domestic commercial distribution rights to the Program, and pursuant to that contract

8  entered into sublicensing agreements with various commercial entities throughout North America to

9  broadcast the Program within their establishments.  (Doc. 1 at 3).  Plaintiff sought to identify signal

10  pirates who broadcast the Program without purchasing a the proper sublicense, and "retained, at

11  considerable expense, auditors and law enforcement personnel to detect and identify signal pirates."

12  (Doc. 11 at 2).

13          Defendants broadcast the Program in their establishment, which had a capacity of

14  approximately 75 people, without purchasing a sublicense from Plaintiff.  (Doc. 1 at 4; Doc. 10-3 at

15  2.)  The cost of a commercial sublicense for an establishment of that capacity would have been

16  $2,200.00.  (Doc. 11, Ex. 1).  For this act, Plaintiff alleges violations of 47 U.S.C. §§ 553 and 605,

17  conversion, and a violation of the California Business and Professions Code.  However, in its

18  application for default judgment, Plaintiff requested damages for the violation of 47 U.S.C. § 605

19  and conversion.  Therefore, the Court will only address these claims against Defendants.

20  **IV.   Application of *Eitel* Factors**

21          Applying the factors articulated by the Ninth Circuit in *Eitel*, the Court finds factors weigh in

22  favor of granting Plaintiff's application for default judgment.

23          A.   Prejudice to Plaintiff

24          Plaintiff has no other alternative by which to recover damages suffered as a result of

25  Defendants' piracy.  *See Pepsico, Inc.*, 238 F.Supp.2d at 1177; *J & J Sports Productions v.*

26  *Rodriguez*, 2010 U.S. Dist. LEXIS 20288, at * 7 (E.D. Cal. March 5, 2010).  Therefore, the Court

27  finds that Plaintiff would be prejudiced if a default judgment is not granted.

28  ///

3

1          B.   Merits of Plaintiff's claims and sufficiency of the complaint

2          Given the kinship of these factors, the Court will consider the merits of Plaintiff's substantive

3    claims and the sufficiency of the complaint together.  *See J & J Sports Productions v. Hernandez*,

4    2010 U.S. Dist. LEXIS 48191, at *3, n. 4 (E.D. Cal. May 17, 2010).  The Ninth Circuit has

5    suggested that, when combined, these factors require a plaintiff to "state a claim on which the

6    plaintiff may recover."  *Pepsico, Inc.*, 238 F.Supp.2d at 1175, citing *Kleopping v. Fireman's Fund*,

7    1996 U.S. Dist. LEXIS 1786, at *6 (N.D. Cal. Feb. 14, 1996).

8                         *Claim arising under 47 U.S.C. § 605*

9          The Federal Communications Act of 1934 ("Communications Act"), 47 U.S.C. § 605,

10   "prohibits the unauthorized use of wire or radio communications, including interception and

11   broadcast of pirated cable or broadcast programming."  *Hernandez*, 2010 U.S. Dist. LEXIS 48191, at

12   *3, n. 3.  In pertinent part, the Communications Act provides, "No person not being authorized by

13   the sender shall intercept any radio communication and divulge or publish the . . . contents . . . of

14   such intercepted communication to any person." 47 U.S.C. § 605(a).  Thus, the Communications Act

15   claim requires Plaintiff to prove that it was the party aggrieved by Defendant's actions. 47 U.S.C. §

16   605(e)(3)(A).  A "person aggrieved" includes a party "with proprietary rights in the intercepted

17   communication by wire or radio, including wholesale or retail distributors of satellite cable

18   programming."  47 U.S.C. § 605(d)(6).

19         In the Complaint, Plaintiff asserted that it was granted the exclusive, nationwide commercial

20   distribution rights to the Program.  (Doc. 1 at 3).  The rate sheet for the Program, attached as Exhibit

21   1 to the affidavit of Joseph Gagliardi, president of J & J Sports Productions, states:

22         All commercial locations that have been licensed to carry this event must have a valid
           license agreement from the OFFICIAL CLOSED-CIRCUIT PROVIDER, G & G Closed
23         Circuit Events, Inc.  There is NO OTHER LEGAL LICENSOR.  Any location that has
           not been licensed by this provider will be considered a PIRATE and TREATED
24         ACCORDINGLY.

25   (Doc. 11, Ex. 1).  Also, the information for questions regarding multiple locations packages names

26   the Vice President of G & G Closed Circuit Events as the contact.  *Id.*  Thus, on the face of the

27   documents provided, it appears Plaintiff contradicted its own pleading because the evidence states

28   there is no other legal licensor than G & G Closed Circuit Events.  However, in a previous case

                                              4

1  brought before this Court, Plaintiff's rate sheet held the same warning.  *See J & J Sports*

2  *Productions, Inc. v. Veloz*, No. 1:10-cv-00761-LJO-JLT, 2010 U.S. Dist. LEXIS 130460, at *8 (E.D.

3  Cal. Dec. 9, 2010).  Upon concern of the Court regarding a lack of allegations connecting Plaintiff

4  and G & G Closed Circuit Events, Mr. Gagliardi stated:

5      Our firm utilized a company called G & G Closed Circuit Events, LLC . . . to sell closed-
       circuit licenses to commercial locations throughout the United States.  G & G had an
6      exclusive agreement in that regard and for that reason, it was G & G (rather than our
       company) that prepared the Rate Card evidencing commercial licensing fees applicable
7      to this particular event.

8  *Id.* at *8-9.  With this declaration, the Court recognized the connection between Plaintiff and G & G

9  Closed Circuit Events, and will do so in the matter now pending.[1]  Thus, the Court finds Plaintiff

10  was the party aggrieved under § 605.

11      In addition to establishing that it was a "person aggrieved," Plaintiff must show Defendants

12  intercepted a wire or radio program and published it without Plaintiff's permission.  47 U.S.C. §

13  605(a).  Plaintiff's investigator did not see a cable box or a satellite dish at the establishment.  (Doc.

14  10-3 at 2).  Plaintiff alleges that it is unable to "determine the precise means that the Defendants used

15  to receive the Program" because Defendants failed to answer the Complaint, and argues, "Plaintiff

16  should not be prejudiced because it cannot isolate the precise means of signal transmission the

17  Defendants used . . ." (Doc. 10-1 at 3).  Similarly, in *Hernandez*, Plaintiff was unable to identify the

18  nature of the transmission.[2]  As noted by the Court, Plaintiff's inability to allege the precise nature of

19  the intercepted transmission in this case . . . raises a question regarding the scope of 47 U.S.C. §

20  605(a) and the sufficiency of plaintiff's claim under that provision."  *Hernandez*, 2010 U.S. Dist.

21  LEXIS 48191, at *10.  According to the Ninth Circuit, satellite signals are communications covered

22

---

23      [1] The Court may take judicial notice of facts that are capable of accurate and ready determination by resort to sources
    whose accuracy cannot reasonably be questioned.  Fed. R. Evid. 201(b); *United States v. Bernal-Obeso*, 989 F.2d 331, 333
24  (9th Cir. 1993).  The record of a United States District Court proceeding is a source whose accuracy cannot reasonably be
    questioned, and judicial notice may be taken of court records.  *Mullis v. United States Bank. Ct.*, 828 F.2d 1385, 1388 n.9
25  (9th Cir. 1987); *Valerio v. Boise Cascade Corp.*, 80 F.R.D. 626, 635 n. 1 (N.D. Cal. 1978), *aff'd*, 645 F.2d 699 (9th Cir.);
    *see also Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236, 1239 (4th Cir. 1989); *Rodic v. Thistledown Racing Club, Inc.*, 615
26  F.2d 736, 738 (6th Cir. 1980).  However, Plaintiff is reminded that it is Plaintiff's obligation, not the Court's, to support its
    motion with evidence that is consistent with its complaint and in the future, **the Court will not cure this defect** for Plaintiff.

27

28      [2] Plaintiff in the matter now before the Court was the plaintiff in *Hernandez*, and represented by the same attorney,
    Thomas P. Riley.  *See* No. 2:09-cv-3389 GEB KJN.

5

by 47 U.S.C. § 605(a).  *Id.*, citing *DIRECTV, Inc. v. Webb*, 545 F.3d 837,844 (9th Cir. 2008). Regardless of Plaintiff's inability to isolate the means of the signal transmission, Plaintiff has raised factual allegations that the Program was broadcast in Defendant's establishment though Defendants did not purchase a license for the broadcast, because Plaintiff's investigator witnessed the match between Santos and Foreman, a fight included in the Program, on two television sets in the bar area of Defendant's establishment.  (Doc. 10-3 at 2).

Therefore, Plaintiff has established the elements of a claim under the Communications Act, because Plaintiff was a party aggrieved and that Defendants intercepted the Program and published it without Plaintiff's permission.

*Conversion*

As recognized by the Ninth Circuit, conversion has three elements under California Law: "ownership or right to possession of property, wrongful disposition of the property right and damages."  *G.S. Rasmussen & Assoc., Inc. v. Kalitta Flying Services, Inc.*, 958 F.2d 896, 906 (9th Cir. 1992); *see also Greka Integrated, Inc. v. Lowrey*, 133 Cal.App.4th 1572, 1581, 35 Ca. Rptr. 3d 684 (2005) ("elements of a conversion are the plaintiff's ownership or right to possession of the property at the time of the conversion; the defendant's conversion by a wrongful act or disposition of property rights; and damages").  Possession of the "[e]xclusive right to distribute a broadcast signal to commercial establishments constitutes a 'right to possession of property' for purposes of conversion."  *G & G Closed Circuit Events, LLC v. Saddeldin*, 2010 U.S. Dist. LEXIS 77585, at *10 (E.D. Cal. Aug. 2, 2010), citing *Don King Prods./Kingsvision v. Lovato*, 911 F.Supp. 429, 423 (N.D. Ca. 1995).  Therefore, to state a claim for conversion, Plaintiff is required to have the exclusive ownership of, or the exclusive right to license, the broadcasting of the Program.

Given that Plaintiff established it held the exclusive distribution right, Plaintiff held a "right to possession of property."  In addition, Plaintiff has shown that Defendants were signal pirates who broadcast the program without a sublicense.  Plaintiff established damages, by providing the rate sheet which showed a sublicense would have cost $2,200.  Thus, Plaintiff has stated a claim for conversion against Defendants.

///

1        C.   Sum of money at stake

2        In considering this factor, the Court "must consider the amount of money at stake in relation

3   to the seriousness of Defendant's conduct."  *Pepsico, Inc.*, 238 F.Supp.2d at 1176.  Here, Plaintiff

4   prays for statutory damages of $110,000 for the willful violation of 47 U.S.C. § 605.  This amount

5   represents the maximum amount Plaintiff would be permitted to recover under the statute, including

6   enhanced damages.  (Doc. 10-1 at 11-14).  In addition, Plaintiff seeks compensatory and punitive

7   damages for Defendants' tortuous conversion of Plaintiff's property.  *Id.* at 15.  Plaintiff asserts that

8   Defendants would have been required to pay $2,200 to broadcast the program at their establishment,

9   but Plaintiff asserts that nominal damages have proven insufficient to combat piracy, and that

10  Defendants should be required to pay the statutory maximum.  (Doc. 10-1 at 14-18).  Thus, Plaintiff

11  seems to concede that amount of damages requested is not proportional to the defendants' conduct.

12       Given the substantial amount of money at stake, this factor could weigh against the entry of

13  default judgment.  *See, e.g., Joe Hand Promotions v. Streshly*, 655 F.Supp.2d 1136 (S.D. Cal. 2009)

14  (proposed award amount of $100,975 was "manifestly excessive under existing law"); *J & J Sports*

15  *Productions. v. Cardoze*, 2010 U.S. Dist. LEXIS 74606, at * 12-13 (N.D. Cal. July 9, 2010) ("a large

16  sum of money at stake would disfavor default damages," such as damages totaling $114,200); *see*

17  *also Board of Trustees of the Sheet Metal Workers v. Vigil*, 2007 U.S. Dist. LEXIS 83691, at *5

18  (N.D. Cal. Nov. 1, 2007) ("default judgment is disfavored if there were a large sum of money

19  involved"); *but see Hernandez*, 2010 U.S. Dist. LEXIS 48791, at *15 ("the statutes involved

20  contemplate such an award under certain circumstances," and the factor did not weigh against entry

21  of default judgment).  Thus, although the significant sum sought would weigh against granting

22  default judgment, given that the Court declines to enter judgment in the amount requested, the Court

23  concludes that the factor does not weigh against entry of judgment here.

24       D.   Possibility of dispute concerning material facts

25       The Court also considers the possibility of dispute as to any material facts in the case.

26  Generally, there is little possibility of dispute concerning material facts because (1) based on the

27  entry of default, the Court accepts allegations in Plaintiff's Complaint as true and (2) Defendants

28

7

1    have not made any effort to challenge the Complaint or otherwise appear in this case.  *See Pepsico,*

2    *Inc.*, 238 F.Supp.2d at 1177.  Therefore, this factor does not weigh against entry of default judgment.

3               E.   Whether default was due to excusable neglect

4          Generally, the Court will consider whether Defendants' failure to answer is due to excusable

5    neglect.  *See Eitel,* 782 F.2d at 1472.  Here, Defendants were properly served with the Summons and

6    Complaint.  Moreover, Defendants received Plaintiff's motion for default judgment.  Given these

7    circumstances, it is unlikely that Defendants' failure to answer, and the resulting defaults entered by

8    the Clerk of Court, were the result of excusable neglect.  *See Shanghai Automation Instrument Co.,*

9    *Ltd. v. Kuei,* 194 F.Supp.2d 995, 1005 (N.D. Cal. 2001) (finding no excusable neglect because the

10   defendants "were properly served with the Complaint, the notice of entry of default, as well as the

11   papers in support of the instant motion").  As a result, this factor does not weigh against default

12   judgment.

13              F.   Policy disfavoring default judgment

14         As noted above, default judgments are disfavored because "[c]ases should be decided on their

15   merits whenever reasonably possible."  *Eitel*, 782 F.2d at 1472.  Defendants' failure to answer the

16   Complaint makes a decision on the merits impractical regarding their liability for signal piracy.

17   Consequently, the policy underlying the Federal Rules of Civil Procedure favoring decisions on the

18   merits does not weigh against Plaintiff.

19   **V.   Damages**

20         Having accepted the well-pleaded allegations as true, Plaintiff established the elements of a

21   violation of the Communications Act and the tort of conversion.  Therefore, Plaintiff is entitled to

22   damages based upon Defendants' act of signal piracy.  Plaintiff argues that "it would be impossible

23   to calculate the full extent of the profits lost by Plaintiffs and the additional damages sustained by

24   Plaintiff as a result of the Defendants' unlawful actions."  (Doc. 10-1 at 9-10).  As stated above,

25   here, Plaintiff requests the statutory maximum, including the maximum enhanced damages for the

26   violation of the Communications Act, in addition to damages for the tort of conversion, bringing the

27   total requested to $112,200.

28   ///

A.  Statutory Damages

Under the Communications Act, a plaintiff may recover actual damages or statutory damages "not less than $1,000 or more than $10,000, as the court considers just." 47 U.S.C. § 605(e)(3)(C)(i)(II). When a court finds a violation was "committed willfully and for the purposes of direct or indirect commercial advantage or private financial gain," a court may award enhanced damages by increasing the awarded damages up to $100,000.00 for each violation.  *Id.* at § 605(e)(3)(C)(ii).

A court may consider many factors to determine whether an act was "committed willfully" and the amount of damages to be awarded.  Notably, "the mere assertion that Defendant[s] acted willfully is insufficient to justify enhanced damages."  *Kingvision Pay-Per-View, Ltd. v. Backman*, 102 F.Supp.2d 1196, 1198 (N.D. Cal. 2000).  Previously, this Court explained:

> To establish significant commercial advantage or private financial gain, a plaintiff must allege something more than the mere airing of a pirated program, such as engaging in promotional advertising, imposing a cover charge, or charging a premium for food or drinks.  The size of the audience, the establishment, or both is also relevant to the measure of enhanced damages, as is whether the customers are present primarily to watch the broadcast or have come for another purpose while the program is being aired.

*Integrated Sports Media, Inc. v. Naranjo*, 2010 U.S. Dist. LEXIS 81264, at *10-11 (E.D. Cal. Aug. 11, 2010) (internal quotation marks and citation omitted), citing *Backman*, 102 F.Supp.2d at 1198. Many courts consider the number and size of televisions upon which the pirated program was broadcast.  *Id.*  Finally, the pirating history of the defendant is a factor, and damages may be enhanced for repeated offenses.  *See, e.g., Joe Hand Promotions v. Gamino*, 2011 U.S. Dist. LEXIS 1960, at *9 (E.D. Cal. Jan. 10, 2011); *J & J Sports Prodsuctions, Inc. v. Ferreyra*, 2010 U.S. Dist. LEXIS 21140, at *11-12 (E.D. Cal. Mar. 9, 2010); *Saddeldin*, 2010 U.S. Dist. LEXIS 77585, at *8.

Here, the capacity of Arriagas Mexican Restaurant & Cantina was 75 people, and the headcount taken by Plaintiff's investigator revealed between 10 and 13 patrons were present.  (Doc. 10-3 at 2).  No cover charge was required for entry, and the Program was shown in the bar area of the establishment on one big screen television, and one small television mounted upon the wall.  *Id.* Plaintiff provided no evidence that a premium was charged for food or drinks, that Defendants advertised their pirated broadcast, or that the customers were present primarily to watch the Program.

*Id.*  Moreover, Plaintiff has not provided evidence that Defendants have engaged in signal piracy on previous occasions.

Despite of the absence of these aggravating facts, Plaintiff argues that it is entitled to the maximum statutory damages of $10,000 for Defendants' wrongful interception and broadcast of the Program.  In support, Plaintiff cites several cases from this district awarding the statutory maximum: *Joe Hand Promotions, Inc. v. Tidmarsh*, 2009 U.S. Dist. LEXIS 54412, 2009 WL 1845090 (E.D. Cal. June 26, 2009) (awarding $10,000 in damages under §605 where there were two televisions, the capacity was fifty people, and there were between 23 and 29 patrons); *J & J Sports Productions v. Esquivel*, 2008 U.S. Dist. LEXIS 92140, 2008 WL 4657741 (E.D. Cal. Oct. 20, 2008) (awarding $10,000 under both §553 and §605, plus enhanced damages where the capacity was 75 people, there were 35 individuals present, and the program was shown on a single television); *J & J Sports Productions, Inc. v. Flores*, 2009 U.S. Dist. LEXIS 54676, 2009 WL 1860520 (E.D. Cal. June 26, 2009) (awarding $10,000 in damages under  §605 where between 33 and 35 people were present, and there was no cover charge, but not stating whether the award included enhanced damages); *J & J Sports Productions, Inc. v. George*, 2008 U.S. Dist. LEXIS 85770, 2008 WL 4224616 (E.D. Cal. Sept. 15, 2008) (awarding $10,000 under both §553 and §605 where the establishment had a capacity of 30 people and 20 were present, there was a single television and no entry fee, but not stating whether the award included enhanced damages).  Though Plaintiff argues these cases are comparable to the matter now before the Court, approximately twice as many patrons were in the establishments compared to the case at hand.

More recently, courts in this district have found that an award of the statutory minimum is appropriate where the defendant is not a repeat offender.  *See, e.g., Joe Hand Promotions v. Brown*, 2010 U.S. Dist. LEXIS 119435 (E.D. Cal. Oct. 27, 2010) (awarding $1,000 in statutory damages and $3,000 in enhanced damages where there were 13-17 patrons present, the program was broadcast on six 60-inch televisions, and there was no premium for food or drink); *Naranjo*, 2010 U.S. Dist. LEXIS 81264 (awarding $1,000 in statutory damages without enhanced damages where the capacity of the restaurant was forty, the number present ranged from 12 to 20, no admission fee was charged, and the program was displayed on a single television).  Notably, the Ninth Circuit upheld an award

of $1,500 in a Communications Act case where the Central District judge reduced the damages award from $80,400 in the course of a Rule 59 motion, though the defendant would have had to pay "somewhere between $3,000 and $6,000 to buy the rights to show the fights" based upon the capacity of the establishment. *Kingvision Pay-Per-View v. Lake Alice Bar*, 168 F.3d 347, 350 (9th Cir. 2009). The Ninth Circuit observed, "The range in the statutory award might allow for a sanction that deters but does not destroy." *Id.*

Asserting a right to enhanced damages, Plaintiff argues, "the fact that such an interception is done for commercial advantage is . . . firmly decided" and that a court may infer willfulness from a defendant's failure to appear and defend. (Doc. 10-1 at 15-16). Supporting this, Plaintiff cites to several cases from district courts in the Second Circuit and a district court from the Fifth Circuit. However, in so arguing, Plaintiff ignores requirement that allegations regarding the amount of damages must be proven. *See Pope*, 323 U.S. at 22; *Geddes*, 559 F.2d at 560. Therefore, district courts within the Ninth Circuit generally require evidence of commercial advantage resulting from the act of piracy.

Absent evidence of commercial advantage or financial gain, the district courts have awarded the statutory minimum where the defendants were not repeat offenders. *See, e.g., Backman*, 102 F.Supp.2d at 1198-99 ("An establishment that does not promote itself by advertising the Program, does not assess a cover charge, and does not charge a special premium for food and drinks hardly seems like the willful perpetrators envisioned by the statute's framers"); *Brown*, 2010 U.S. Dist LEXIS 119435; *Naranjo*, 2010 U.S. Dist. LEXIS 81264; *Garden City Boxing Club, Inc. v. Nguyen*, 2005 U.S. Dist. LEXIS 29886, at *12 (E.D. Cal. Nov. 28, 2005) (awarding the statutory minimum and finding "no evidence of significant commercial advantage or private financial gain" where the defendant did not advertise or charge admission, and ten customers were present); *J & J Sports Productions v. Miranda*, 2009 U.S. Dist. LEXIS 112415, at *3-4 (N.D. Cal. Nov. 16, 2009) (awarding $1,000 in statutory damages for where the court found "no evidence that the violation occurred multiple times, that the establishment intended to directly profit from the violation, or that it actually profited from the violation"); *J & J Sports Productions v. Hernandezsilva*, 2010 U.S. Dist. LEXIS 96891 (S.D. Cal. Sept. 15, 2010) (awarding $1,000 because "Plaintiff does not alleged

11

repeated violations, does not claim that Defendants advertised the event, and offers only conclusory statements in support of its contentions that Defendants realized financial gain from showing the program"). Plaintiff states that "the unlawful exhibition may well have been promoted by word of mouth or advertising that went undetected by the auditors, to their own customers to increase their financial gain on the night our programs are broadcast at their establishment." (Doc. 11 at 4). However, this assertion is purely speculative. Therefore, Plaintiff has not shown evidence that Defendants acted "for the purposes of direct or indirect commercial advantage or private financial gain" as required for enhanced damages.

Generally, when determining the total damages to be awarded for signal piracy, "the principle of proportionality governs." *Backman*, 102 F.Supp.2d at 1198. Under this principle, "distributors should not be overcompensated and statutory awards should be proportional to the violation." *Id.* As observed in *Streshly*, Defendants "may be the Blackbeard of pirates, but Plaintiff makes no attempt to portray [them] as such, and to the contrary, the act of piracy attributed to [Defendants] is as routine as they come . . ." *Streshly*, 655 F.Supp.2d at 1139 (S.D. Cal. 2009). There, the court refused to entertain the plaintiff's request for the maximum amount of statutory damages, noting that the requested amount of $100,875 was "ostensibly disproportionate." *Id.* Because the plaintiff advertised the pirated program, the offense in *Streshly* was more egregious than the act found here.[3] In spite of this, the total amount sought by Plaintiff exceeds the amount requested in *Streshly*.

Considering the above factors, the Court will not recommend that Plaintiff's request for an award of the statutory maximum be ordered. Rather, the facts weigh in favor of awarding the statutory minimum of $1,000. Few patrons were present in Defendants' establishment, there was no advertising of the bouts, and a cover charge was not required for entry. Enhanced damages are not warranted because there is no evidence that Defendants have engaged in signal piracy on previous occasions and, given the number of patrons, any commercial advantage appears minimal at best.

///

///

---

[3] Notably, the plaintiff in *Streshly* was represented by the same counsel, Thomas P. Riley. In *Streshly*, the plaintiff requested a total of $100,875 in damages. Here, the request is for $112,200. (Doc. 10 at 3).

### B.   Damages for Conversion

Plaintiff requests $2,200 for damages for the tort of conversion.  (Doc. 10-1 at 15).  The rate card attached to the declaration of Mr. Gagliardi indicates that established with a capacity up to one hundred patrons were charged $2,200 for a sublicense.  (Doc. 11, Ex. 1 at 2).  The investigator indicated the maximum capacity for Arriagas Mexican Restaurant & Cantina was 75.  (Doc. 10-3 at 2).  Defendants would have been required to pay $2,200, and Plaintiff is entitled to this amount in damages.  *See, e.g., Naranjo*, 2010 U.S. Dist. LEXIS 81264, at *6 (calculating damages for conversion based upon the amount defendants would have been required to pay for a broadcasting sublicense); *Brown*, 2010 U.S. Dist LEXIS 119435, at *16-17; *but see Ferreyra*, 2008 U.S. Dist LEXIS 75840, at *2-3 ("Inasmuch as plaintiff seeks statutory damages rather than actual damages, plaintiff's request for damages for conversion should be denied"); *J & J Sports Productions v. Bachman*, 2010 U.S. Dist. LEXIS 44884, at *22 (declining to award conversion damages where the amount of statutory damages "sufficiently compensate[d]" the plaintiff).  Therefore, the Court recommends $2,200 in damages for the tort of conversion.

## VI.   Attorney Fees and Costs

In Plaintiff's prayer for relief in the complaint, as well as in the application for default judgment, Plaintiff seeks the award of costs and attorneys fees pursuant to 47 U.S.C. § 605.  However, the supporting documents for the application do not contain any argument in support of such a request.  Moreover, no evidence of costs or attorney fees incurred was submitted to the Court in connection with the pending motion.  Accordingly, the Court will deem this issue waived and will not recommend the award of attorney fees and costs.

## VII.   Findings and Recommendations

The *Eitel* factors weigh in favor of granting default judgment, and the Court would be acting within its discretion in granting entry of default judgment.  *See Aldabe*, 616 F.2d at 1092.  However, the total damages requested are disproportionate to Defendants' actions.  Though Plaintiff argues a higher award is necessary to deter future acts of signal piracy, the Court finds the arguments unpersuasive in light of the record before it.  Moreover, the Ninth Circuit has observed that the Court is to award an amount that will deter future piracy but not a amount that will destroy the business.

*See Lake Alice Bar*, 168 F.3d at 350.  Given the size of the establishment in issue, a lower amount both compensates Plaintiff for the wrong act and acts as a suitable deterrence for Defendants.

Accordingly, the Court **RECOMMENDS** Plaintiff's application for default judgment be **GRANTED IN PART AND DENIED IN PART** as follows:

1.      Plaintiff's request for statutory damages for the violation of the Communications Act be **GRANTED** in the amount of $1,000;

2.      Plaintiff's request for enhanced damages be **DENIED**;

3.      Plaintiff's request for damages for the tort of conversion be **GRANTED** in the amount of $2,200; and

4.      Plaintiff's request for attorney fees and costs be **DENIED** as waived.

These Findings and Recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within 14 days after being served with these Findings and Recommendations, any party may file written objections with the court.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Replies to any objections shall be filed within 14 days of the filing of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **January 28, 2011**                                              **/s/ Jennifer L. Thurston**
                                                                                              UNITED STATES MAGISTRATE JUDGE